IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MADISON REALTY CAPITAL, L.P.,  §
                               §
            Plaintiff,         §
                               §
VS.                            §   CIVIL ACTION H-09-3558
                               §
JAMES D. SALVAGIO,             §
                               §
       *Pro Se* Defendant.     §

**OPINION AND ORDER**

Pending before the Court in the above referenced cause seeking
to recover for breach of a personal guaranty of a promissory note,
are Plaintiff Madison Realty Capital, L.P.'s ("Madison's) motion
for summary judgment (instrument #12) and *pro se* Defendant James D.
Salvagio's motion to dismiss (#13) for lack of standing, or request
to convert the motion to one for summary judgment.

After careful review of the parties' submissions and the
applicable law, for reasons indicated below the Court concludes
that Salvagio's motion to dismiss or for summary judgment should be
denied and Madison's motion for summary judgment should be granted.

**Standard of Review**

**Federal Rule of Civil Procedure 56(c)**

Summary judgment is proper when "the pleadings, the discovery
and disclosure materials on file, and any affidavits show that

-1-

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114

(5ᵗʰ Cir. 1993).   Summary judgment is proper if the non-movant
"fails to make a showing sufficient to establish the existence of
an element essential to that party's case." *Celotex Corp.*, 477
U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744,
752 (5ᵗʰ Cir. 2006).   Although the court draws all reasonable
inferences in favor of the non-movant, the non-movant "cannot
defeat summary judgment with conclusory, unsubstantiated
assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor
Richardson Med. Center*, 476 F.3d 337, 343 (5ᵗʰ Cir. 2007).
Conjecture, conclusory allegations, unsubstantiated assertions and
speculation are not adequate to satisfy the nonmovant's burden.
*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5ᵗʰ Cir. 1994);
*Ramsey v. Henderson*, 286 F.3d 264, 269 (5ᵗʰ Cir. 2002).   Nor are
pleadings competent summary judgment evidence. *Little,* 37 F.3d at
1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5ᵗʰ Cir. 1996).

**Federal Rule of Civil Procedure 12(b)(1)**

Although Defendant cites Rule 12(b)(6) to argue that Madison
lacks standing to sue, such a challenge is properly brought under
Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter
jurisdiction.   Standing is "an essential and unchanging part of the
case-or-controversy requirement of Article III." *Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Horne v. Flores*,
__ U.S. ___, 129 S. Ct. 2579, 2592 (2009).   To establish standing,
a plaintiff must present an injury that is concrete,

particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling. *Lujan*, 504 U.S. at 560-61. When a plaintiff cannot meet the standing requirements imposed by Article III, the court lacks subject matter jurisdiction over the case. *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009). Thus a motion to dismiss for lack of subject-matter jurisdiction must be considered first as a court must have subject matter jurisdiction to rule on the merits on a plaintiff's claim on a motion for summary judgment.[1] *Goldin v. Bartholow*, 166 F.3d 710, 714 (5th Cir. 1999). The party asserting jurisdiction has the burden of showing that he has standing to sue. *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995), *citing Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466,

---

[1] Because granting a summary judgment is a disposition on the merits, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981).

Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Com'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 199 (5th Cir. 2000).  If it is a facial attack, allegations in the complaint are taken as true. *Id., citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).  If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction.  *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).  Salvagio's motion to dismiss for lack of standing is a factual attack.  In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  When jurisdiction rests on a disputed factual issue, the court examines evidentiary materials submitted by the parties, and the plaintiff must prove that the facts supporting subject matter jurisdiction are true by a preponderance of the evidence.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Russell v. Choicepoint Services, Inc.*, 302 F. Supp. 2d 654, 663 (E.D. La. 2004)(a standing challenge pursuant to Rule 12(b)(1) can be characterized as either a "facial attack" or a "factual attack").

## Factual Allegations

Madison alleges that on or about March 20, 2006 Defendant James D. Salvagio and Fay M. Bourgeois as Trustees of Gulf Coast Arms ("Borrower) executed and delivered to Madison a promissory note ("Note")(Ex. A to both Complaint, #1, and to motion for summary judgment, #12)[2] in which the Borrower promised to pay the principal sum of four million dollars plus interest as provided in the Note. At the same time Defendant James D. Salvagio, as Guarantor, signed a guaranty ("Guaranty," Ex. B) absolutely and unconditionally guaranteeing the full and timely payment of the indebtedness evidenced by the Note. By a letter agreement dated March 30, 2007 (Ex. C), Madison agreed to extend the maturity date of the Note to March 20, 2008. Salvagio and Madison entered into a First Amendment to Real Estate Lien Note ("First Amendment," Ex. D) on or about February 15, 2008. The Note matured on March 20, 2008 and remained unpaid. On May 2, 2008 Madison, Borrower and Salvagio entered into a Forbearance Agreement (Ex. E), in which Madison agreed to forbear from exercising its rights under the Note until July 31, 2008. On or about that date, the parties entered into a First Amendment to the Forbearance Agreement (Ex. F), according to which Madison extended the Forbearance Agreement to December 31, 2008. Plaintiff asserts that Borrower defaulted on

---

[2] All exhibits are attached to both documents with the same letter designations.

the Note.   On March 6, 2009 by letter (Ex. G), Madison made a demand on Borrower and Salvagio for payment of the sums due on the Note and Guaranty, four million dollars plus unpaid interest at the rate set forth in the Note.   Madison now sues to recover that and any other sums due and owing under the terms of the Note and Guaranty.   According to the Guaranty, Madison maintains that it is entitled to recover reasonable costs of collection, including attorneys' fees pursuant to Chapter 38.001 *et seq.* of the Texas Civil Practice and Remedies Code.[3]

## Relevant Law

"A guaranty agreement is a person's promise to perform the same act that another person is contractually bound to perform.  A guaranty creates a secondary obligation under which the guarantor promises to answer for the debt of the primary obligor if the primary obligor fails to perform." *Shin v. Sharif*, No. 2-08-347-CV, 2009 WL 1565028, *2 (Tex. App.--Fort Worth June 4, 2009), *citing Simmons v. Compania Financiera Libano, S.A.*, 830 S.W. 2d 789, 792 (Tex. App.--Houston [1st Dist.] 1992, writ denied), and *Garner v. Corpus Christi Nat'l Bank*, 944 S.W. 2d 469, 475 (Tex. App.--Corpus Christi 1997, writ denied).

---

[3] Section 38.001(8) provides, "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."

To recover on a guaranty agreement, the plaintiff must show (1) the existence and ownership of the guaranty agreement, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or the refusal to perform the promise by the guarantor. *Id.* If the guaranty is in writing and signed by the guarantor, its existence presumes consideration. *Id., citing Simpson v. MBank Dallas, N.A.*, 724 S.W. 2d 102, 107 (Tex. App.--Dallas 1987, writ ref'd n.r.e.).

A guaranty is construed like any other contract. *Id.* at *3, *citing Mid-South Telecomm. Co. v. Best*, 184 S.W. 3d 386, 390 (Tex. App.--Austin 2006, no pet.). The court will enforce an unambiguous guaranty as written and will not consider parole evidence to create an ambiguity or to give the contract a meaning different from that which its language indicates. *Id.*, *citing Standard Constructors, Inc. v. Chevron Co.*, 101 S.W. 3d 619, 624 (Tex. App.--Houston [1st Dist.] 2003, pet, denied)(extrinsic evidence is not admissible to contradict or vary the meaning of unambiguous language in a written contract.). The interpretation of a guaranty is a question of law for the court. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W. 3d 417, 423 (Tex. 2000). The court's concern in interpreting a contract is to determine the true intentions of the parties as expressed in the writing. *Id., citing Coker v. Coker*, 650 S.W. 2d 391, 393 (Tex. 1983). The court must examine the entire writing

-8-

and attempt to harmonize and give effect to all provisions of the contract so that none is rendered meaningless. *Id., citing id.* The parties are presumed to have intended every clause to have some effect. *Id., citing Heritage Res., Inc. v. NationsBank*, 939 S.W. 2d 118, 121 (Tex. 1996). Terms shall be give their plain, ordinary, and generally accepted meaning unless the contract demonstrates that the parties used them in a technical or different way. *Id., citing id.*

### Plaintiff's Motion for Summary Judgment (#12)

Plaintiff argues that there is no genuine issue of material fact that it is the owner and holder of the Guaranty; that under the terms of the Guaranty, Salvagio unconditionally and absolutely guaranteed the full and punctual payment, performance, and satisfaction of all indebtedness of Borrower to Madison, including the Note; the Note is in default; and Salvagio has failed to perform his promises under the Guaranty.

Madison claims it is entitled to recover its reasonable costs of collection, including attorneys' fees under the Guaranty and Chapter 38.001 *et seq.* of the Texas Civil Practice and Remedies Code, incurred in collecting sums due and owing under the Guaranty. Madison submits an affidavit of its counsel, Julia A. Cook, supporting fees and expenses in the sum of $39,281.44.

Alternatively, Madison requests partial summary judgment to narrow the factual and legal issues.

### Salvagio's Response (#14)

Defendant argues that under the terms of the Note, and as evidenced by the affidavit of Brian Shatz (Ex. 1 of Madison's motion for summary judgment, #12), Madison agreed not to release $1,145,000.00 of the loan amount of $4,000,000.00.  Madison never accounted for that sum, and Salvagio maintains that he was never given use of these funds yet had to pay interest on them, while Madison was unjustly enriched by the withheld amount; rather the funds wrongly belonged to Madison and were part of a strategy to pay for the First Lien in hopes that the Borrower would default and Madison would keep the property.  Defendant argues that Shatz's statement that Madison is the current Note Holder is not true.

Salvagio, with his own affidavit in support, contends that Madison is not the current lien or Note Holder and that it is not entitled to collect any funds relating to the Note because HUD procedures were not followed.  #14, Ex. C (Letter from U.S. Dept. of Housing and Urban Development ("HUD").  He insists that Madison must present proofs of claim for what the Court finds to be a meritless laundry list of things (#14 at 3-4) not required by law nor matters on which Plaintiff bears the burden of proof, so the Court will not repeat them, but refer the parties to that pleading.

Salvagio's affidavit, which is replete with unsubstantiated conclusions of law, also conclusorily charges that Madison failed to comply with the Truth in Lending Act, 15 U.S.C. §§ 1601, *et*

*seq.*, because required disclosures were not made and the whole process was obtained by fraud, fraudulent inducement, concealment and misrepresentation, so the documents are vitiated.

Salvagio contends that Madison has no standing because it is not a holder in due course because it assigned the Note to another party.

## Madison's Reply (#21)

Madison points out that ¶ 1(D) of the Note fully disclosed the holdback amount of $1,145,000.00 agreed to by the parties and provides that Madison "will not release $1,145,000.00 of the Loan amount for any purpose other than to pay in full the first Deed of Trust currently on the Premises." The parties further agreed that interest would be charged on the full $4,000,000.00, provided that if the loan is paid in full within six months from the date of the Note, Madison will refund all interest charged on the $1,145,000.00 to Borrower. There is nothing "nefarious" about Madison in a second lien position withholding sums to pay off the first lien Deed of Trust nor with charging interest on sums reserved for the benefit of the Borrower when the Borrower agreed to pay interest on those amounts. Salvagio was aware of these provisions when he signed the Note as Trustee of Gulf Coast Arms and when he signed his absolute, unconditional Guaranty. In the Guaranty he represents and warrants that neither the Guaranty nor the Loan documents will violate any provision of law, rule, or regulation of

any order of the court.   Ex. B to #1.   In the Letter Agreement dated March 30, 2007, Salvagio acknowledges and agrees that he has no offsets, defenses, claims or counterclaims against Madison relating to his liabilities and obligations to Madison and that he ratifies and confirms the terms and conditions of the Note, Deed of Trust, and Guaranty.   Ex. C to #12. In the subsequent Forbearance Agreement and First Amendment to Forbearance Agreement, Borrower and Guarantor again acknowledge and agree that they have no offsets, defenses, claims or counterclaims against Lender Madison with respect to their obligations on the Note, Deed of Trust, and Guaranty.   Exs. E and F to #12.   Thus Salvagio is precluded from raising any issues regarding the holdback or the charging of interest on these documents.

There is also no issue about the accounting on the holdback, insists Madison.   Brian Shatz's affidavit and the account statement attached to it reflect the original loan amount of $4,000,000.00 in accord with the Note.   Exs. I and H to #12.   Madison has accounted for all payments that were made on the note.   Moreover it has shown that in the First Amendment to Real Estate Lien Note, Gulf Coast Arms and Madison altered the Note by agreeing to reduce the holdback to $850,000.00 and to apply the difference between the $145,000.00 and the $850,000.00 (i.e., the sum of $250,000.00) to past due interest payments and additional interest payments as they come due.   Ex. D to #12.   In accord with the First Amendment to

Real Estate lien, as reflected by Madison's account statement, on February 25, 2008, $250,000.00 is reclassified from "Holdback" to "Interest Reserve" and applied as a credit on the loan. Ex. I and H to #12. After the forbearance period under the First Amended Forbearance Agreement expired on December 31, 2008, Madison sent Gulf Coast Arms and Salvagio a notice of default on March 6, 2009 notifying them that the Loan was due and payable in full. Ex. G to #12. Subsequently Madison applied the remaining holdback of $850,000.00 to reduce the principal balance of the Loan to $3,150,000.00. Madison now sues for $3,150,000.00 plus interest and attorneys' fees.

Madison responds to Salvagio's contention that it is not the owner and holder of the Note because the Note was assigned to another party. Ex. A, Assignment of [Madison's] Deed of Trust to Capital Source Finance LLC ("CapSource"), to #14. That document states that it is "given as collateral security" for the obligations of Madison to CapSource. As shown by the two Allonges attached to the Note, although Madison originally endorsed the Note over to CapSource, the Note was endorsed back to Madison by CapSource on August 6, 2008 before Madison filed this action. Thus Madison is the current owner and holder of the Note. Exs. I and A to #12. Although Salvagio also references the Note of Foreclosure to support his claim that Madison in not the holder, the Notice does not support his position. The Notice, dated November 12,

2010, was sent by Mr. Lawhon on behalf of Madison as Lender on the $4,000,000.00 loan from Madison to Gulf Coast Arms and it notifies Gulf Coast Arms that the Lender will begin non-judicial foreclosure proceedings against the collateral. The attached Notice of Foreclosure refers to Madison as the Beneficiary under the Deed of Trust, the payee under the Note, and as having the right to credit bid against the indebtedness secured by the Deed of Trust. Ex. B to #14.

Salvagio's argument that Madison is not a holder in due course is not relevant to Madison's motion for summary judgment because it is the owner and holder of the Note. A holder is relevant to a transfer of the payee on a note, while a holder in due course is not the payee of the instrument; Madison is the payee on the Note. Comment 4, Section 3.302 of the Tex. Bus. & Com. Code. Under Section 3.301 of the Texas Business and Commerce Code, a holder of a note is entitled to enforce the Note. Section 1.201(21) defines a "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Madison is in possession of the Note, which is a negotiable instrument, and the Note is payable to Madison. As such, Madison is the holder of the Note and is entitled to enforce it.

Salvagio's affidavit suggests that Madison violated the Truth in Lending Act. The Court agrees with Madison that the Act has no

application to this lawsuit, but instead applies to consumer transactions. 15 U.S.C. §§ 1602 and 1603.

Salvagio presents no evidence to support his affidavit's allegation of fraud.

Moreover the letter from HUD attached as Ex. C to 14 does not show that Madison has no right to collect against the Loan. Instead it indicates that if Madison proceeds with foreclosure of the collateral for the Loan, the purchaser at foreclosure will be subject to the existing first lien note and deed of trust and other documents referenced in the letter.

In sum, Madison contends it is entitled to summary judgment for breach of the guaranty because there is no genuine issue of material fact that (1) Madison is the owner and holder of the Guaranty; (2) under the terms of the Guaranty, Salvagio unconditionally and absolutely guaranteed the full and punctual payment, performance and satisfaction of all indebtedness of Gulf Coast Arms to Madison, including the Note; (3) the Note is in default; and (4) Salvagio has failed to perform his promises under the Guaranty. Salvagio asks for the following relief"

(a) $3,150,000.00 plus unpaid interest as of September 23, 2010, in the amount of $1,513,766.68 and per diem interest from and after September 23, 2010 at the rate of $2,100.00 per day;

(b) attorneys' fees and expenses in the amount of $30,404,68;

(c) costs of court;

(d) post judgment interest as provided by law.

**Salvagio's Motion to Dismiss for Lack of Standing (#13)**

As indicated, although Salvagio asserts his motion under Rule 12(b)(6), the Court reviews Salvagio's motion to dismiss for lack of standing under Rule 12(b)(1).

Salvagio asserts that Madison is not the holder in due course of the Note and therefore is legally and equitably barred from seeking a remedy before this Court. He quotes what he claims is the Notice of Foreclosure Sale on Gulf Coast Arms Apartments as evidence and references his affidavit attached to his response to Madison's motion for summary judgment. Ex. A attached to Salvagio's response is an Assignment of Deed of Trust reflecting the assignment of Madison's Deed of Trust and the indebtedness secured by it from Madison to CapSource. The assignment expressly states that it is "given as collateral security" for the obligations of Madison to CapSource. Exhibit B to Salvagio's affidavit is a letter dated November 12, 2010 and the Notice of Foreclosure sent to Gulf Coast Arms and Salvagio by Mr. Lawhon on behalf of Madison, as Lender on the $4,000,000.00 loan from Madison to Gulf Coast Arms.

**Madison's Response (#22)**

-16-

Madison insisting it has met pleading standards under Rule 12(b)(6), claims that its Complaint sets forth a straightforward suit on a guaranty, stating the facts, outlining various loan documents including the Note, amendments to the Note, the Guaranty, and the forbearance agreements. Madison points out that it pleaded in its Complaint that as the owner and holder of the Note, for which Madison is the payee, Madison is entitled to enforce the Note and its accompanying Guaranty. It asserts that the Borrower defaulted on the Note, that Madison made demand on Salvagio for payment of sums due on the Note and Guaranty, and that Salvagio failed to pay the sums due on the Note and Guaranty. It also provided fair notice of the nature of Madison's claim and the factual allegations necessary to support its claim. Madison's Complaint does not assert that it is a holder in due course, and thus that status is not relevant to its claims before the Court.

Should the Court in the alternative pursuant to Salvagio's request convert Salvagio's motion to dismiss into a motion for summary judgment, Madison incorporates its motion for summary judgment and reply herein.

As noted by the Court, it is entitled to examine evidence outside the Complaint under Rule 12(b)(1) where the facts are disputed, and accordingly reviews the summary judgment evidence for that purpose.

As discussed regarding its motion for summary judgment, Madison explains that it originally endorsed the Note over to CapSource, but that the Note was endorsed back to Madison by CapSource on August 6, 2008, as evidenced by the two Allonges attached to the Note, before Madison filed this action. The affidavit of Ben Shatz, attached to Madison's motion for summary judgment, indicates that Madison endorsed the Note to CapSource on April 7, 2006 as collateral for advances made by CapSource to Madison, as evidenced by the first Allonge attached to the Note. The Shatz affidavit also states that the Note was endorsed back to Madison by CapSource on August 6, 2008, evidenced by the second Allonge attached to the Note. The Note and Shatz affidavit establish that Madison is the current owner and holder of the Note.

The letter in Exhibit B to Salvagio's affidavit informs Gulf Coast Arms that Lender will commence non-judicial foreclosure proceedings against the collateral. The attached Notice of Foreclosure refers to Madison as the Beneficiary under the Deed of Trust, the payee under the Note, and as having the right to credit bid against the indebtedness secured by the Deed of Trust. The Notice references CSE Mortgage, LLC as successor in interest to CapSource, as Collateral Assignee of the Deed of Trust and indebtedness secured by it.

Section 3.301 of the Texas Business and Commerce Code defines "holder" as "the person in possession of a negotiable instrument

-18-

that is payable either to bearer or to an identified person that is
the person in possession.  Madison is in possession of the Note,
which is a negotiable instrument, and the Note is payable to
Madison.  Thus Madison is the holder of the Note and is entitled to
enforce it.  Thus Salvagio's motion should be denied.

### Court's Decision

The Court finds that with appropriate evidence including the
Note plus Allonges and the Guaranty, affidavit testimony, and
financial documents demonstrating that Salvagio owes money to
Madison, Madison has shown that it has standing to sue and recover
for breach of Guaranty:  that at the time of filing this suit,
Madison was and still is holder of the underlying Note and the
owner and holder of the Guaranty; that it performed under the
promissory note signed by James D. Salvagio and Fay M. Bourgeois as
Trustees of Gulf Coast Arms; that the condition for Salvagio's
liability under the Guaranty occurred when Borrower defaulted on
the Note; and that despite amendments and forbearance agreements
detailed above, Salvagio has failed to perform under the Guaranty.
Moreover Madison has shown that there was nothing deceitful about
the holdback amount and that Salvagio several times in writing
agreed that he had no offsets, defenses, claims or counterclaims
relating to this obligations under the Note, Deed of Trust or
Guaranty.  Exs. E and F.  Moreover Madison has also established
that the temporary indorsement and assignment of the Note to

CapSource had been re-indorsed and re-assigned to Madison before it filed the suit and thus Madison was owner and holder of the Note and the Guaranty, with standing to sue to enforce the latter. Despite conclusory charges against Madison, Salvagio has failed to produce evidence that raises a genuine issue of material fact as to Madison's standing or the merits of its motion for summary judgment to enforce the guaranty.

Accordingly for the reasons indicated, the Court

ORDERS that Madison's motion for summary judgment (#12) is GRANTED and Salvagio's motion to dismiss under Rule 12(b)(1) is DENIED.  The Court further

ORDERS that Madison shall submit within one week a proposed final summary judgment with updated figures.  Madison shall also submit an updated request for a specific amount for reasonable attorney's fees, supplement Julia A. Cook's affidavit with billing records and an affidavit addressing the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 171-19 (5th Cir. 1974). *See Campbell v. Hardradio*, No. 3:01-CV-2663-BF, 2003 U.S. Dist. LEXIS 23584, *5 (N.D. Tex. Dec. 31, 2003)(determination of reasonable attorneys' fees under Texas law is "virtually identical to the *Johnson* factors used by the Fifth Circuit."), *citing Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W. 2d 812, 818 (Tex. 1997); *Vela v. City of Houston*, 276 F.3d 659, 679-81 (5th Cir. 2001).

Finally, the Court

ORDERS that Madison's newly filed motions to compel (#24 and 26 are MOOT. The Court further

ORDERS Madison to inform the Court whether it wishes to pursue its motion for sanctions (#26).

**SIGNED** at Houston, Texas, this ___14^th___ day of ___February___, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE